## Case No. 11,322.

### POTTER et al. v. COGGESHALL.

[4 N. B. R. 73 (Quarto, 19).] [1]

District Court, D. Rhode Island. 1870. [2]

BANKRUPTCY—PREFERENCE—MORTGAGES GIVEN AS SECURITY.

1. Where bankrupt was charged, on petition of creditors, with having, in December, 1867, executed a mortgage with intent to prefer other creditors, and, in April, 1868, with having suspended and not resumed payment within fourteen days, the court granted an injunction on said mortgage, and, in July, the debtor was adjudicated bankrupt. The bankrupt leased a spacious mansion, and converted it into an infirmary and bathing establishment, and was supplied with wares and merchandise for fitting up the same by the mortgagees, upon an agreement of

---

[1] [Reprinted by permission.]
[2] [Affirmed in Case No. 2,955.]

credit. Held, there is not sufficient ground in the evidence for adjudging that debtor was insolvent or contemplated insolvency, or that, in making the mortgage, he even thought of the bankrupt act [of 1867 (14 Stat. 517)], much less intended to violate any of its provisions. The mortgagees wisely asked for security, and the debtor had a right to give it. They are not shown to have violated any law, nor, so far as appears in the proofs, any private pledge or stipulation, or any wholesome custom of trade. Judgment in their favor, with costs of suit.

[Cited in Johnson v. Patterson, Case No. 7,-403.]

[2. Cited in Bromley v. Smith, Case No. 1,922, and Rogers v. Winsor, Id. 12,023, to the point that, in cases unaffected by fraud, the assignee takes subject to all the equities binding upon the bankrupt.]

[Cited in Brown v. Brabb, 67 Mich. 28, 34 N. W. 408; Shaw v. Glen, 37 N. J. Eq. 135; Martin v. Bowen, 51 N. J. Eq. 452, 26 Atl. 824.]

[This was a petition by Potter, Denison & Co. against James H. Coggeshall, assignee in bankruptcy of Joseph Dow, for the purpose of establishing the validity of a certain chattel mortgage executed by the bankrupt to the plaintiffs.]

KNOWLES, District Judge. The issue presented by the record (made up by my predecessor on the 7th of October, 1868) relates solely to the validity of a certain mortgage, as between the petitioners, Potter, Denison & Co., mortgagees, and James H. Coggeshall, trustee of Joseph Dow, with the powers and rights of an assignee under the bankrupt act; and I understand that neither party now questions the legality or expediency of disposing of the cause upon its merits, regardless of all judicial dicta or decisions touching the forms of procedure in such cases. Whether a claimant of property in the hands of an assignee can prosecute his claim by petition simply, or is bound by the terms of the law to institute a suit in equity by formal bill of complaint, is a question upon which I am not to be understood here to intimate an opinion.

The controversy arises upon the following facts briefly stated: On the petition of Thomas Phillips & Co., a citation in bankruptcy was issued on the 23d of June, 1868, against Joseph Dow, returnable on the 1st of July, 1868. The acts of bankruptcy charged were these: First. That on the 24th of December, 1867, he, being insolvent, made and executed a mortgage of certain personal effects to Potter, Denison & Co., with the intent to give a preference thereby to them, they being creditors of his. Second. That, being insolvent, he, on the 24th of December, 1867, made said mortgage of said property, with the intent, by such disposition of his property, to defeat or delay the operation of the bankrupt act. Third. That on the 6th of April, 1868, being a trader, he suspended and did not resume payment of his commercial paper within a period of fourteen days. Fourth. That, on the 24th of December, 1867, he made a conveyance or transfer of certain

property, by way of mortgage, to Potter, Denison & Co., with an intent to delay, hinder, or defraud his creditors. On the 29th of June, on the representation of Phillips & Co. that Potter, Denison & Co. were about to take possession of said property under their said mortgage, the court granted an injunction against any disturbance of the possession of Dow, who, on the 8th of July, was adjudged a bankrupt by default, upon the aforesaid petition of Phillips, and the matter referred to a register. On the 27th of July, claims to the amount of seven thousand and forty-one dollars and ninety-five cents, were filed and proved by ten creditors, by whom, unanimously, James H. Coggeshall was appointed trustee, with the powers of an assignee (under section 4 of the bankrupt act), to whom conveyances as prescribed by law were made on the 5th of August, 1868, by said Dow. The property having thus constructively passed into the hands of the assignee, Potter, Denison & Co., on the 9th of September, 1868, filed a petition setting forth their claims and grievances, averring that the property was deteriorating (the trustee permitting it to be retained and used by the bankrupt), and praying for relief; upon a hearing of which, the court ordered that the property in question be appraised by disinterested appraisers, under oath, and the trustee give bond to Potter, Denison & Co., to pay to them the value of it, as reported by the appraisers, "if and whenever it shall be legally ascertained that the said mortgage is a valid mortgage, and that the title of said Potter, Denison & Co. to said property under the same, is valid." This order was made on the 7th of October, and the first Wednesday of November, 1868, assigned for the inquiry directed. The appraisers, on the 30th of November made report, appraising the property as of the value of one thousand six hundred and fifty-eight dollars and sixty-two cents—its cost in the autumn of 1867 having been two thousand two hundred and sixty-five dollars and nineteen cents.

Is the instrument in question a valid mortgage? is, therefore, the question submitted to me upon the depositions of Potter, Denison, and Colwell (their counsel) on the one side, and of Dow and Anthony (late of the firm of P., D. & Co.) on the other, and the documentary evidence, and the elaborate arguments of the learned and indefatigable counsel. The instrument relied on by the petitioners is a chattel mortgage in the common form, dated December 24th, 1867—acknowledged the same day, and lodged for record December 26th, 1867—the consideration named being two thousand two hundred and sixty-five dollars and nineteen cents; and the notes secured, being six in number, each for the sum of three hundred and seventy-seven dollars and fifty-one cents, with interest from December 24th, at bank rates, and payable respectively, one on the 1st of March, 1868—the others six, nine, twelve, fif-

teen, and eighteen months after date. The ordinary provisions in favor of the mortgagee, including a power to sell on breach of condition, are embodied in the deed, and the description of the property conveyed, is as follows: "The articles of personal property enumerated and described in the schedules and bills, marked respectively A, B, C, and D, hereto annexed, and constituting a part of this mortgage, meaning and intending hereby to convey, as well the articles mentioned in said schedules, upon which repairing, labor, and work has been done, as those charged and mentioned in said schedules, as furnished to said Joseph Dow by the said Potter, Denison & Co., said articles now being situated in the house occupied by said Joseph Dow in said Providence." The schedules referred to, A, B, C, and D, are simply the four pages of a bill of parcels and charges of Potter, Denison & Co. (dealers in household furniture), against said Dow—the first twenty charges being under dates of May 31 to August 8, amounting to about one hundred and sixty dollars, the others, amounting to over two thousand dollars, being under dates of September 9 to November 30. But these schedules, although attached to the mortgage, and although left with it at the office of the city clerk (as is shown by his indorsement upon the instrument), were not in fact recorded, so that the record book gave to inquirers only the information contained in the description above quoted.

And upon this state of facts the counsel for the trustee maintains that his client, stopping here, is entitled to a judgment in his favor, because, firstly, a mortgage, to be of avail against a bona fide purchaser or an attaching creditor, must, by our statute, be a recorded mortgage, and the assignee or trustee under the bankrupt act takes a bankrupt's property as a bona fide purchaser for value, as a creditor would; and, secondly, the instrument here relied on as having been recorded, inasmuch as without the schedules it was unintelligible, ought to be, and must be treated as a nullity. Two questions are here presented, each of interest and importance. Upon one only, however, is it necessary here to express an opinion. If, as maintained on behalf of Potter, Denison & Co., an assignee or trustee in bankruptcy is to be regarded as standing in the shoes of the bankrupt—as, in contemplation of law, a party to the transactions in which his assignor was a party, then it matters not to inquire whether the mortgage in this case was fully and effectually recorded or not, or whether or not it was recorded at all. On their behalf, in direct antagonism with the assumption on the trustee's part, it is contended that the assignee takes the property of the bankrupt, subject to all equities and liens (other than certain attachments) as held by him; and, consequently, that as the mortgage in question, under our state law, was valid as between Dow and the grantors, though not recorded, it must be held valid

between Dow's trustee and them. And in this construction of the law I am constrained to concur, after a deliberate consideration of the authorities referred to, and the arguments submitted by the learned counsel of the trustee in support of his position. My learned predecessor, as I am credibly informed, gave to the law this construction, and more recently the learned judge (Lowell) of the Massachusetts district, Ex parte Dalby [Case No. 3.540], has favored the bar and bench with an exhaustive opinion in support of that construction. A sufficient answer to the counsel's labored and ingenious argument, grounded on the proviso referring to mortgages in the 14th section of the bankrupt act, is found in this opinion, in these words: "The proviso appears to have been inserted out of greater caution, lest it should be supposed that valid chattel mortgages should be affected by the assignment, and not with any view of construing the law regarding record." Such has been my view of this proviso since, years ago, I was first called on as counsel, to advise concerning its meaning, and such, too, is the view of Chief Justice Chase, as I infer from his language reported in Re Wynne [Case No. 18.117]. Nor am I prepared to admit, as contended at the bar, that the opinion of Judge Blatchford in Re Meyers [Id. 9,518], cited by counsel, is not in harmony with this ruling of Judge Lowell. Under the statute of New Jersey, which Judge Blatchford was bound to regard, he could not rule, in the case before him, otherwise than he did. In Re Metzger [Id. 9,510], I fail to find in the opinion of Judge Hall anything inconsistent with the ruling of Judge Lowell in Ex parte Dalby [supra]. Adjudging, as I do, that the mortgage in question is not invalid for lack of proper registration, I proceed to treat of the other objections to the claim of the petitioners.

On behalf of the trustee, it is strenuously contended that upon the evidence said Dow is chargeable, in view of this mortgage transaction, with fraudulently preferring his creditors, Potter, Denison & Co., he being insolvent; and that Potter, Denison & Co. are chargeable, both with knowledge of his insolvency and knowledge of his fraudulent intent, as punitive consequences of which, Dow forfeits all claim to a discharge, and the petitioners not only are barred from claiming under their mortgage, but also are barred from proving their claim against the bankrupt's estate and sharing in the distribution of his assets. The answer of the petitioners to these allegations is two-fold. The first is, that assuming the allegations of the fact to be true, the trustee is estopped from impeaching the transaction, because the proceedings in bankruptcy against Dow were not commenced until six months (less one day) after the act of preference—and not within four months, as expressly required by the first clause of section 35 of the bankrupt act. After the lapse of four months, say they, the preferences—simply preferences—which an insolvent debtor may have made, are to be held valid as against all the world, so far as the preferred creditor is concerned. And this, in my judgment, is a sufficient answer. Nor am I aware that in thus ruling, I indicate dissent from any judicial opinion, or dictum even, to which my attention has been directed, or which has come under my observation. That my ruling is in harmony with the views of the distinguished framer or father of the bankrupt act, is evidenced by the Congressional Globe of March 27, 1866, page 1693, in the report of a colloquy between Mr. Jenckes and a fellow-representative, concerning the proviso of which I have above spoken. A second answer of the petitioners is an emphatic denial that Dow was insolvent in December, 1867, or then contemplated bankruptcy or insolvency, or that he or the petitioning creditors, in fact, gave a thought to that act, when the petitioners pressed for, and obtained a mortgage upon the goods they had themselves furnished or repaired, within the preceding ninety days, to secure payment for them within the eighteen months next to ensue. Of this second answer of the petitioners, under my ruling as above stated, it would be unnecessary to speak, did not the trustee further contend, that inasmuch as the mortgage in question was a transfer or conveyance of property within six months before the commencement of proceedings in bankruptcy, it is to be held void, and is moreover prima facie evidence of fraud, not being made in the usual and ordinary course of business of the debtor; contending also, of course, that the proofs bring the case within the provision of the second clause of section 35 of the bankrupt act, which is as follows: "And if any person, being insolvent, or in contemplation of insolvency or bankruptcy, within six months before the filing of the petition by or against him, makes any payment, sale, assignment, transfer, conveyance, or other disposition of any part of his property to any person who then has reasonable cause to believe him to be insolvent, or to be acting in contemplation of insolvency, and that such payment, sale, assignment, transfer, or other conveyance is made with a view to prevent his property from coming to his assignee in bankruptcy, or to prevent the same from being distributed under this act. or to defeat the object of, or in any way impair. hinder, impede, or delay the operation and effect of, or to evade any of the provisions of this act, the sale, assignment, transfer, or conveyance shall be void, and the assignee may recover the property, or the value thereof, as assets of the bankrupt. And if such sale, assignment. .transfer, or conveyance is not made in the usual and ordinary course of business of the debtor, the fact shall be prima facie evidence of fraud."

To this claim on behalf of the trustee, as to the other, a twofold answer is given by the petitioners. They deny, as before, that the

facts warrant the conclusions which the trustee deduces from them, and on their part contend that the clause of section 35 above quoted. has no bearing whatever upon a case of preference by a bankrupt of a creditor's claim, which is, say they, the offense, and the only offense of which the bankrupt Dow is to be suspected even, upon the evidence. And in these views of the petitioners, both as to the bearing and effect of the proofs, and as to the construction of the statute, I concur. The statute recognizes—nay, demands—that we make a distinction between a preference to a creditor and a sale, transfer, or conveyance to one not a creditor; and when this required distinction is made, it is manifest that to the claim of the petitioners, the trustee makes no sufficient defense. This construction of the law, by the way, I find to be in harmony with the views entertained by my learned predecessor, Judge Bullock, as indicated in Re Hunt [Case No. 6,881].

The facts brought to view by the testimony are eminently exceptional, constituting a case strictly sui generis. The bankrupt Dow, in June or July, 1867, conceived the idea that to lease a spacious mansion-house on the corner of Waterman and Benefit streets, in Providence, for a term of ten years, and fit and furnish it as a quasi infirmary, with all conveniences for resident patients and all needful arrangements for bathing, à la Turque, and otherwise, for the public at large, would be a profitable enterprise. His income from his profession, as a physician, for two years preceding, had averaged from four to five thousand dollars per year, and he had of his own, or within his control. some five thousand dollars of the ten thousand dollars of capital deemed needful for the proposed undertaking, according to the estimates of the builders, furnishers, and artisans with whom he consulted. At that time, even before leasing the house above mentioned, he conferred with Denison, of the petitioning firm, concerning the furnishing of the house, stating what was his income, his means, and his purposes, and stating also that he should be obliged to ask credit for the furniture he should need, to cost, as he estimated, about a thousand dollars or more. The responses of Denison, it would seem, were in accord with Dow's wishes, as he undeniably understood that for any goods purchased of Potter, Denison & Co., should he need them, he would not be expected to pay until able to do so from his earnings as a physician, and the income and profits from his infirmary and bathing establishment. What were his representations to other parties with whom he proposed to deal, we are left to surmise; that he was not equally ingenuous in his statement to them, is not shown by any testimony, nor even asserted arguendo by counsel. In July he took possession of the Waterman street estate under try lease, and proceeded to arrange and adapt it to his purposes, employing, of course, laborers, carpenters, masons, plumbers, and other artisans, and contracting debts with carpet-dealers, crockery-dealers, and other traders, and in September, October, and November, ordered and received from Potter, Denison & Co., wares and merchandise to the amount (including a few charges for repairs of some articles of furniture), two thousand two hundred and sixty-five dollars and nineteen cents. It does not appear that until about the middle of November, anything was said to the doctor by any member of the firm concerning the amount of his account, or its settlement in any mode. Then, however, for the first time, he was called upon by Mr. Potter, whom he had never before seen, who introduced himself as senior partner of the firm, and after premising that the doctor's bill had swollen to a large amount, suggested that its payment in full, or in part, was desirable upon several grounds. To this the doctor replied with commendable frankness. He said he had not now the money in hand to discharge this debt, or certain other outstanding claims incurred in fitting up his establishment, not as yet fully, though about completed. He had expended and paid out all the money which he had at the outset, but, as his outlays, instead of coming within ten thousand or eleven thousand dollars as he had estimated, had amounted to about fifteen thousand dollars, he was at the stand as to what he should do. But as to the firm's claim, he had to say that he was surprised that a call for payment was made now, because it was understood and agreed that he was to be allowed a credit, and, but for that agreement, he would not have purchased the goods. To this. Mr. Potter's reply was, that the firm's terms were cash; that he, Potter, was the financial manager of the firm; and that Mr. Denison's agreements as to credit were not recognized as binding. Besides, the bill was for about twice the amount it was expected to be by Mr. Denison, and the firm needed the money. Between the doctor and Mr. Potter there were two or three interviews within the succeeding month, and Potter, ascertaining that the doctor could not, or would not, by borrowing or hiring, procure for him the money, at last insisted that he should give him notes for the amount of the debt, secured by mortgage of the goods specified in the bills rendered; and the doctor, after resentfully declining to give a mortgage, because the claim was already safe enough, and he confidently expected soon to be able to pay all his debts from his earnings and the profits of the new business in which he had engaged, and after proffering to Potter a return of the goods, which he declined accepting, finally consented to execute the mortgage, which Potter had caused to be prepared by his own attorney from instructions given (as I understand the testimony) before the debtor had agreed to give a mortgage, if not before the giving of one had

been a subject of negotiation. At this date (December 24, 1867, the new establishment not, in fact, being in operation) it is not shown or insinuated that any person other than the petitioning firm entertained a doubt of the success of the doctor's · experiment. And whether, even at the date of the proceedings in bankruptcy (June, 1868), the doctor himself, or the mass of his creditors, had become skeptical or despondent in this regard, is matter of question: for (an exceptional fact this certainly!) it appears that before the petition in bankruptcy was filed by Phillips & Co., that firm and other creditors called on the doctor and asked him if he was willing they should put him into bankruptcy? To which he answered: "I thought it would injure my business; but I was in the hands of my creditors, and they must do what they thought best." He had, however, at the same interview, before any allusion to bankruptcy, told these gentlemen that he "didn't know of any other way to free himself from his embarrassment, but to give a mortgage on the improvements and fixtures of the leased estate, and get a loan, and pay all his creditors;" thus showing, that he, at least, in June, 1868, considered himself able to pay all his debts. And then —"in the hands of his creditors"—they file a petition in bankruptcy against him, on the 23d of June, containing charges as above quoted; on the 29th of June they obtain an injunction against any proceedings under their mortgage by Potter, Denison & Co.; on the 8th of July, Dow is adjudged a bankrupt on default; on the 27th of July all the creditors (saving P. D. & Co.) prove their claims and unanimously appoint a trustee to manage the estate; which trustee permits the entire property of the bankrupt to remain in his possession in use by him as originally contemplated, for an infirmary, bathing establishment, and boarding-house, down to this hour—not only without paying for the use of said property, but without even agreeing or promising ever to pay for that use, meanwhile persistently resisting the claim of the petitioners for the mortgaged property or its appraised value.

Now, without controverting divers familiar rules and maxims of law, cited on behalf of the trustee, I fail to find any sufficient ground in the evidence submitted for adjudging that Dow, in December, 1867, was insolvent, or contemplated bankruptcy or insolvency, or that, in making the mortgage in question, he even thought of the bankrupt act, much less deliberately resolved and intended to violate some of its wholesome provisions. It is true, that there were then outstanding claims against him, which he had not the money in hand wherewith to pay; but, on the other hand, it does not appear that any of these were then due under the arrangements and understanding between him and his creditors; while it does appear that all the property and effects, in procuring which these debts had been contracted, and some five thousand dollars of his own earnings been expended, were still in his possession, uninjured and undecayed; that his health was as vigorous, his skill as unquestioned, his character as untarnished, his credit as good, his friends, sympathizers and patients as numerous and zealous, and, finally, the enterprise of business in which he had just engaged as promising in prospectu, as ever before. Indeed, as we have seen, his business, in arranging for and establishing which his pecuniary obligations, then yet to mature, had been incurred, had not then commenced. To adjudge that he was then insolvent, within the reasonable intent of the bankrupt act, were to do what no court has yet done, and what the court of this district will not be the first to do. To adjudge that the petitioners were privy to a fraudulent intent on the part of such a debtor, in whose mind it must, upon the evidence, be conceded no such intent ever had birth or dwelling-place, were to do what were even more culpable, if that were not an impossibility. The petitioners wisely asked security for their debt upon the property they had agreed to sell upon a credit. Their debtor gave it, as was indisputably his right to do, both he and his grantees being, of course, bound to know that until four months should have elapsed the transaction would be impeachable, and for adequate cause be branded as void and fraudulent. They are not shown to have violated any law, nor, so far as appears in the proofs, any private pledge or stipulation, or any wholesome custom of trade. My judgment upon the issue presented is in their favor, with costs of suit, if, in this form of proceedings, costs are taxable. Of the action of the other creditors of Dow, under whose order and direction the trustee has so long resisted the claim of the petitioners, I refrain from speaking. The bankrupt act, it must not be forgotten, is designed and suited not only to thwart and defeat the machinations of the knavish bankrupt colluding with a rapacious mortgagee to hinder, delay and defraud the mass of his creditors, but also, and equally, to thwart and defeat the machinations of a body of creditors colluding with a demoralized or faint-hearted bankrupt to annoy, worry, delay, and wrong an innocent mortgagee. Says Chief Justice Chase, in Re Wynne [supra], "It is as much the policy of the bankrupt act to uphold liens and trusts when valid, as it is to set them aside when invalid."

A decree was entered in accordance with the opinion, and the court adjourned to September 7th.

[The decree of this court was affirmed by the circuit court upon review. Case No. 2,955.]